## SUPREME COURT — TRIAL TERM — KINGS COUNTY.

## ANTONIO BADOLATO v. DOMENICO MOLINARI.

### February, 1919.

(106 Misc. 342.)

BAIL*—WHEN SURETY ON BAIL BOND MAY RECOVER UNON IMPLIED AGREEMENT OF INDEMNITY—CRIMINAL LAW.

A surety on a bail bond given in a criminal action may recover from the defendant upon an implied agreement of indemnity, the amount the plaintiff was obliged to pay because of defendant's failure to appear.

ACTION by surety on a bail bond.

*Mark Rudich*, for plaintiff.

*Creamer & Adams*, for defendant.

CROPSY, J.:

The question is whether the surety on a bail bond for a defendant in a criminal action who has not been promised indemnity can recover from the defendant the amount he has been obliged to pay on his bond because of defendant's failure to appear. The bond in question was one to answer and was executed only by the surety. The defendant did not need to join in it. (Code Crim. Pro., § 568.)

The general rule is conceded, that a surety may hold his principal on an implied agreement to indemnify even where there is no express promise. But the claim is that this rule does not apply in the case of sureties on bail bonds given in criminal cases. There are two contentions made as to this; one, that there

---

* See note, Vol. 34, p. 32.

can be no indemnity upon either an implied or an express con-
tract, as such an agreement is void, being against public policy,
and the other that even though there may be no indemnity pro-
vided by an express agreement no such agreement will ever be
implied. It is the latter contention that the defendant here
makes. He concedes apparently that an express agreement may
be enforced.

The question is interesting. A study of it shows considerable
conflict in the cases and among the writers. An express agree-
ment for indemnity has been held void as against public policy.
(Herman v. Jeuchner, 15 Q. B. Div. 561; United Sttaes v.
Greene, 163 Fed. Rep. 442; United States v. Simmons, 47 id.
575; Pingrey Sure. & Guar., §§ 415, 416.) But some cases hold
that though the principal may not indemnify his bail a third
party may do so. (United States v. Greene, 163 Fed. Rep.
442; People v. Ingersoll, 14 Abb. Pr. [N. S.] 23.) Other
cases uphold the right to indemnity where there is an express
contract, though most of them deny the right on an implied
agreement. (Stearns Suretyship, 540; Cripps v. Hartnoll, 4
B. & S. 414; United States v. Ryder, 110 U. S. 729; Ewing
v. United States, 240 Fed. Rep. 241-252; Simpson v. Robert,
35 Ga. 180; Carr v. Davis, 64 W. Va. 522; 20 L. R. A. [N. S.],
58; Ellis v. Norman, 19 Ky. L. Rep. 1798; Moloney v. Nelson,
12 App. Div. 545, affd., 158 N. Y. 351-355.) Still other cases
hold that a recovery may be had, though there be no express
agreement — the implied agreement being held to exist as in
the usual case of principal and surety. (Petersdorff Bail, 516,
517; Reynolds v. Harral, 2 Strobhart [S. C.], 87; Fagin v.
Goggin, 12 R. I. 398; Harp. v. Osgood, 2 Hill, 216-219; Brandt
Sure. & Guar. [3d ed.], § 610.) Though one case at least holds
that an implied agreement will be enforced if the surety fur-
nished cash bail but not if he executed a bond. (Hutchinson &
Co. v. Morris Bros., 86 Mo. App. 40.)

The principle underlying the cases which hold that there can

be no indemnity is that under the theory of bail in those jurisdictions the bondsman becomes virtually the accused's jailor, and so the government has a double security for his disappearance; that the government seeks the presence of the accused rather than the amount of money represented by the bail bond and to permit the surety to be indemnified would destroy his incentive to produce the defendant. And so it is not surprising to find that express agreements of indemnity have been held to be void where they were made on the understanding that the principal would escape and would not stand trial. (Dunkin v. Hodge, 46 Ala. 523; Ratcliffe v. Smith, 13 Bush [Ky.], 172.)

But these reasons, if sufficient, to justify the holding that no implied agreement of indemnity could be enforced should likewise require the holding that an express agreement was void. There seems to be no reason for treating the one situation differently from the other. If the right to indemnify the bail is recognized and unobjectionable and not in contravention of public policy there should be no reason for holding such an agreement to be valid if based upon an express contract. The manner in which the contract was created must be immaterial. If it is not against public policy to agree to indemnify bail it cannot be against public policy to imply that such an agreement was made. If the law honors itself in enforcing an express contract it should not stultify itself by refusing to enforce an implied contract which would accomplish exactly the same result.

The theory of bail in the jurisdictions in which decisions have been rendered declaring either express or implied contracts of indemnity or both to be void does not exist in this State. Under the common law cash could not be accepted as or in lieu of bail. It is acceptable only when authorized by statute. (Bishop New Crim. Pro. [2d ed.], § 264; 6 C. J. 1023; Eagan v. Stevens, 39 Hun, 311; McNamara v. Wallace, 97 App. Div. 76.) In the jurisdictions referred to cash bail could not be accepted. Nor was it authorized in this State before the

adoption of the Criminal Code in 1881. Such a provision was contained in the proposed Code of Criminal Procedure prepared in 1850 by Mr. David Dudley Field (see §§ 648-650), but it was not enacted until more than thirty years thereafter. (See Code Crim. Pro., §§ 586, 587, 588.) Under these provisions the theory of bail that existed in jurisdictions which did not permit of the deposit of cash as bail does not apply. The accused himself may deposit cash and secure his release, and so the State does not look to the obligation of some third party as bail to produce the accused. As the court said in Moloney v. Nelson (158 N. Y. 351, 355): " it is the loss of the money deposited, or the assurance that the sureties will be obliged to pay the amount of the bail, that is relied upon to secure the presence of the accused. It, therefore, cannot be said to be a part of the public policy of this State to insist upon personal liability of sureties, for there need not be such personal liability in any case if the accused make a deposit of money in lieu of bail as provided by the statute." And the United States Supreme Court seems to have accepted this view of the matter. In Leary v. United States (224 U. S. 567, 575), that court said: " Bail no longer is the mundium, although a trace of the old relation remains in the right to arrest. (Revised Statutes, § 1018.) The distinction between bail and suretyship is pretty nearly forgotten. The interest to produce the body of the principal in court is impersonal and wholly pecuniary."

That bail might be indemnified and even be paid for executing the bond was expressly recognized in this State by the addition in 1912 of section 577-a to the Criminal Code, allowing surety companies to give bail.

It follows that in this State a bondsman for an accused in a criminal action may recover from the accused upon an implied agreement of indemnity the amount he has been obliged to pay because of the latter's failure to appear. The plaintiff is entitled to judgment for the amount stipulated, with costs.

Judgment accordingly.